**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-02669-JLK

EMMETT LARSEN,

      Applicant,

v.

DEAN WILLIAMS, Executive Director, Colorado Department of Corrections; and
PHILIP J. WEISER, Attorney General of the State of Colorado,

      Respondents.

_____

**MEMORANDUM OPINION AND ORDER**
_____

Kane, J.

      With his Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF

No. 1), Emmett Larsen challenges his conviction for sexual assault on a child by one in a

position of trust committed as a part of a pattern of sexual abuse. Mr. Larsen was charged in El

Paso County District Court with three counts of sexually assaulting his twin granddaughters, AH

and KH, when they were nine years old:

      Count 1: Sexual Assault on a Child by One in a Position of Trust–Pattern of Sexual
            Abuse (AH the alleged victim);

      Count 2: Sexual Assault on a Child by One in a Position of Trust (AH the alleged
            victim); and

      Count 3: Sexual Assault on a Child by One in a Position of Trust (KH the alleged victim).

The jury's general verdicts found Mr. Larsen guilty on Counts 1 and 2 (those related to AH) and

not guilty on Count 3 (that related to KH). The trial court "merged" the non-pattern count of

conviction (Count 2)[1] into the pattern count of conviction (Count 1) and sentenced Mr. Larsen to the mandatory minimum sentence of 8 years to life in prison.

Mr. Larsen's direct appeals in state court ultimately proved unsuccessful, and he now seeks habeas relief from this Court on two separate grounds:

1. That his conviction is not supported by the required jury findings and that it therefore violates his right to trial by jury and to due process of law, which requires proof beyond a reasonable doubt of all elements required to support a conviction, and

2. That the trial court's total exclusion of evidence and limits on cross-examination concerning the government's efforts to take custody of the alleged victims away from their mother during an evening recess in the mother's testimony violated Mr. Larsen's rights to confrontation, to present a defense, and to a fair trial.

I find Mr. Larsen's conviction for the pattern count is not supported by the jury's findings and verdicts and grant relief on that basis.

## I. Background[2]

In September 2011, AH and KH moved to Colorado Springs, Colorado, from California with their mother SL, who had lost her job and was unable to find other employment in California. In Colorado Springs, AH, KH, and SL moved in with SL's father, Emmett Larsen, and his wife. Larsen is a retired Federal Aviation Administration employee and used his federal benefits to provide insurance for his granddaughters, who had health issues requiring ongoing care.

---

[1] Since the only two counts at issue in this case are the ones related to AH for which Larsen was convicted, I refer to Count 1 (the Sexual Assault on a Child by One in a Position of Trust–Pattern of Sexual Abuse count) as the "pattern count" and Count 2 (the Sexual Assault on a Child by One in a Position of Trust) as the "non-pattern count."

[2] The record before me appears to be incomplete. However, the parties' versions of the relevant underlying facts are not materially disputed, and the facts confirmed by the missing exhibits are supported by other evidence in the record.

AH and KH had been sexually abused by their paternal uncle in California. KH revealed her prior abuse to Larsen while they were living with him, and he sought counseling for her. When KH disclosed the sexual abuse by her uncle to her counselor, the counselor reported it to the authorities. As a result, Patricia Hartman, a social worker with the El Paso County Department of Human Services, visited Larsen's home on August 2, 2012, to speak with KH about her allegations regarding the uncle. Hartman was required to interview all members of the home, so she interviewed both KH and AH, separately. At trial, Hartman testified that, during those interviews, KH did not disclose any inappropriate contact other than that involving her uncle. 8/15/13 Trial Tr. at 63:2-17, ECF No. 7. AH, on the other hand, told Hartman that Larsen had touched her twice on her breast area and vaginal area and once on just her vaginal area. *Id.* at 65:17-22. Upon hearing AH's claims, Hartman arranged for SL to take her daughters to Safe Passage, a child advocacy center in Colorado Springs, in order for the girls to undergo forensic interviews and to protect them from continued contact with Larsen.

When KH was interviewed at Safe Passage, she again disclosed only the sexual abuse by her uncle and specifically denied any inappropriate touching by Larsen. *See* 8/13/13 Trial Tr. at 170:2-9,174:6-10, 205:4-206:18, 207:6-24, ECF No. 7. At trial, however, KH testified that her grandfather had touched her breast area once. *Id.* at 170:15–172:16.

AH told her interviewer at Safe Passage that it was hard to talk about what had happened with her grandfather, but eventually, she wrote down:

> My grampa tached my in the down part of my boddy and the up part dut he did not mean it it was an asedent he is nice and fun

AH Note, Def. Trial Ex. B at 1, ECF No. 7. AH went on to tell the interviewer she had been touched three times by her grandfather—first, on her breasts, which she believed was an accident; second, over her underwear in the front for less than a second; and third, on her breasts

over her clothes. *See* 8/14/13 Trial Tr. at 67:23-69:6, ECF No. 7. In contrast, AH testified at trial

that she did not remember her grandfather touching her in the "down part" but that he had

touched her in the "up part," meaning her breast. *Id.* at 30:3-31:9, 32:10-12, 50:16-22.

SL was interviewed by Detective Kory Dabb at Safe Passage. She was then directed by

Officer Rebecca Arndt to make a "pretext call" to her father in an effort to obtain a confession or

to corroborate what AH and KH had described. 8/15/13 Trial Tr. at 98:23-101:23; Call Tr., CF[3]

at 70–81, ECF No. 7. During the call, SL repeatedly stated that she was afraid her children would

be taken from her and explained that she needed to know anything Larsen had done. Larsen

responded that the single incident that had occurred was the one they had previously discussed in

which KH had placed his hand on her boob for a second. *Id.* at 73-75. He claimed the only

touching of AH he had done was in rubbing her back and tickling her. *Id.* Notably, the call

records SL asking Larsen, "why did you ever molest me?" and him answering, "I explained that

to you once." *Id.* at 78-79.

Larsen was interviewed by Officer Arndt later that same day. *See* Larsen Interview,

People's Ex., ECF No. 7. Throughout the interview, he maintained that any touching of his

granddaughters was not for sexual gratification. *Id.* at 76:25-77:9, 80:17-24, 84:14-16, 101:10-

11, 102:17-22. He did, however, admit to touching his daughter in a sexual manner. *Id.* at 88:7-

91:22, 99:6-100:5.

There was conflicting evidence at trial on whether SL had previously been told by both of

her daughters that Larsen had touched them inappropriately. SL testified that KH had told her

about an incident, but she did not recall knowing about any incident with AH until Hartman

came to the house. 8/14/13 Trial Tr. at 123:15-124:13, 141:15-142:4. In contrast, Hartman and

---

[3]CF refers to the Court File.

Detective Dabb, the officer who interviewed SL at Safe Passage, both testified that SL said she was previously aware of touching involving AH and had confronted Larsen, who acknowledged he had done it and said he was sorry and would not do it again. 8/15/13 Trial Tr. at 66:8-18, 83:3-85:25.

The parties also elicited testimony at trial regarding SL's motivations as Hartman and the officers were investigating. SL testified that she was initially hesitant in speaking with them but acceded to their requests, including by making the pretext phone call, because she felt they were threatening to take her children from her. 8/14/13 Trial Tr. at 142:22-143:11; 8/15/13 Trial Tr. at 39:5-41:6. Hartman and Detective Dabb denied making any such threats. *Id.* at 67:25-68:2, 86:25-87:6. And Officer Arndt stated that she made clear to SL that her cooperation was not determinative of whether she would retain custody of her children as it was "a [Department of Human Services] issue and not a law enforcement issue." *Id.* at 101:24-102:22. Still, Hartman admitted that she told SL that the children would need to be removed if SL did not act to keep them safe, and she acknowledged that SL was "very cooperative, very protective. Very scared, but willing to do what she needed to do to keep the kids safe." *Id.* at 68:20-69:2. Along those same lines, Officer Arndt testified that she informed SL that the Department was working on court orders to take custody of her daughters because SL had instructed them not to disclose anything in their interviews. *Id.* at 102:3-17.

During the trial, KH and AH testified that they had periodically been staying with Larsen while the criminal proceedings against him were ongoing. 8/13/13 Trial Tr. at 176:3-23, 186:4-187:1; 8/14/13 Trial Tr. at 24:15-20, 41:6-45:13. SL confirmed this fact and claimed she did not have to leave her daughters with Larsen if she thought they were in danger with him. 8/15/13 Trial Tr. at 46:3-48:5. An individual in the courtroom heard the girls' testimony and felt

compelled to report their continued contact with Larsen to the Department of Human Services. 8/15/13 Trial Tr. at 4:10-16. A custody order for SL's daughters was then obtained from a magistrate judge. *Id.* at 8:17-18. Hartman was sent out during the evening recess in SL's testimony to take custody of the children but was unsuccessful in locating them. She did encounter SL, who reportedly stated that Hartman was "making a big mistake," that her daughters were not sexually abused by Larsen, and that she was forced to say everything in the last investigation. Def. 2/11/14 Ex. A at 1, ECF No. 7.

The next morning, before SL was slated to retake the stand, Larsen's counsel advised the court that he anticipated questioning her about the events of the previous evening. 8/15/13 Trial Tr. at 10:21-11:4. The judge ordered that defense counsel "not to go into that" and stated that he would not allow counsel "to cross-examine in that area." *Id.* at 11:5-6. Defense counsel objected on the grounds that prohibiting him from eliciting such testimony would deny Mr. Larsen his constitutional rights to present a defense, to counsel, and to appropriate cross-examination. *Id.* at 12:18-25. He explained that the testimony would bolster the defense's argument that SL made the pretext phone call, the allegations, and the statements to the police because she was being threatened with having her children taken from her. *Id.* at 12:3-7. The judge did not budge. *Id.* at 13:1-6. Instead, the judge relayed to SL before she continued testifying that he had countermanded the custody order, telling her: "The children are not going to be taken away from you. Any further action involving your children will have to be ordered by me and no other judge, and they are aware of that." *Id.* at 15:20-23. Defense counsel repeatedly renewed his request to elicit testimony on the Department's most recent attempt to take custody of the children, and each time the judge denied it. *Id.* at 48:25-49:3, 69:17-20.

The jury acquitted Larsen of the charge involving KH but found him guilty of both the pattern and non-pattern counts involving AH. In addition to the general verdict, the verdict form for the pattern count contained two specific interrogatories. The jury responded to those questions finding: (1) that Larsen *did* commit the pattern count by touching AH's breasts under her shirt; and (2) that Larsen *did not* commit the pattern count by touching AH's vaginal area over her underwear. The trial judge "merged" the pattern and non-pattern counts of conviction for sentencing and sentenced Larsen to the mandatory minimum sentence triggered by the pattern count—8 years to life in prison. Judgment, CF at 309.

*State Court Direct Appeal*

Larsen filed a direct appeal in the Colorado Court of Appeals, in which he asserted three grounds for reversal. Two of those grounds are similar to what he raises here. There, Larsen argued:

1. His rights to confrontation, to present a defense, and to a fair trial were violated when the trial court excluded evidence of efforts by the Department of Human Services to take custody of KH and AH away from SL during the overnight recess in SL's testimony;

2. His conviction for the pattern count must be vacated because the jury's findings and verdict do not support the required factual finding of two or more incidents of sexual contact involving the same child; and

3. He was denied his due process right to a fair trial and a trial by an impartial jury when the trial court refused his request to poll the jury after prejudicial material was published in the local newspaper.

The Court of Appeals reversed Larsen's conviction, holding that the trial court abused its discretion in failing to poll the jury after the prejudicial article was published. *People v. Larsen*, Case No. 14CA0487, 2015 WL 6746509, *4 (Colo. App. Nov. 5, 2015) ("*Larsen 1*"), *rev'd People v. Larsen*, 393 P.3d 543 (Colo. 2017) ("*Larsen 2*"). But the court upheld the trial court's

evidentiary ruling and deemed it unnecessary to address the jury's findings and verdict since it was remanding for a new trial. *Larsen 1*, 2015 WL 6746509, *5-6. The Colorado Supreme Court granted the State's petition for certiorari and reversed the Court of Appeals' holding on the jury polling claim. *Larsen 2,* 393 P.3d at 547.

On remand, the Court of Appeals issued a second opinion, this time ruling on the jury verdicts claim and upholding the conviction. *See People v. Larsen*, Case No. 14CA0487 (Colo. App. July 20, 2017) (unpublished) ("*Larsen 3*"), ECF No. 1-3. Larsen then filed a petition for rehearing. The court denied the petition and instead issued a modified opinion. *See People v. Larsen*, Case No. 14CA0487 (Colo. App. Oct. 26, 2017) (unpublished) ("*Larsen 4*"), ECF No. 1-5. Judge Berger dissented, stating that he would grant the petition for rehearing and reverse the conviction for the pattern count on the ground that the verdict "does not carry the indicia of reliability that [they] must insist on in serious criminal cases." *Id.* at 11.

Larsen petitioned the Colorado Supreme Court for certiorari. The court denied his petition on June 25, 2018. *See Larsen v. People*, No. 17SC810, 2018 WL 3104246 (Colo. June 25, 2018). Justices Marquez and Gabriel indicated they would have granted certiorari on:

> Whether in light of the plain language of the sentence enhancement statute and *United States v. Alleyne*, 570 U.S. 99 (2013), which requires the jury to find any fact that increases a mandatory minimum sentence, the pattern offense-sentence enhancement count must be vacated since the jury did not find the required two or more acts.

*Id.* at 1.


*Claims Raised in Larsen's Application*

As recited above, Larsen's Application for a Writ of Habeas Corpus makes two claims, one arguing the jury's findings and verdicts are insufficient to support his conviction and the

other asserting that the trial court improperly excluded evidence on the attempted removal of AH and KH from SL during the trial.

## II. Habeas Corpus Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). Although the nature and purpose of habeas corpus are informed by the common law, federal courts are only empowered to exercise the writ to the extent authorized by Congress. *Ex Parte Bollman*, 8 U.S. 75, 93-94 (1807). Over time, the scope and function of habeas corpus review available in federal courts has been significantly curtailed by Congress and the U.S. Supreme Court. An example of such a limitation is the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). The Act "requires a state prisoner seeking federal habeas relief first to 'exhaus[t] the remedies available in the courts of the State.'" *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016) (per curiam) (quoting 28 U.S.C. § 2254(b)(1)(A)). Then, as the Supreme Court has underscored, the Act "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett,* 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). Federal courts are only freed from the Act's strictures when the state courts have not adjudicated the prisoner's federal claim "on the merits." *See Kernan*, 136 S. Ct. at 1604 (quoting 28 U.S.C. 2254(d)).

*Deferential Review*

When the state courts have addressed a prisoner's claim on the merits, habeas relief is appropriate if the adjudication by the state courts:

> (1) resulted in a decision that was **contrary to**, or involved **an unreasonable application of**, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on **an unreasonable determination of the facts** in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).

A decision is **contrary to clearly established Federal law** "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring in the judgment of the Court and delivering the opinion of the Court as to Part II).

A decision is **an unreasonable application of clearly established Federal law** if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case . . . ." *Id.* at 407-08. The reasonableness of a decision, *vel non*, is determined by reference to an objective standard. *Id.* at 409. "[A] state court's application of federal law is only unreasonable if 'all fairminded jurists would agree the state court decision was incorrect.'" *Wood v. Carpenter*, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting *Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014)).

A decision is not based on **an unreasonable determination of the facts** "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). The Supreme Court has warned that, "even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Id.* (internal quotation marks, citation, and alteration omitted). The Tenth Circuit has elaborated that a state court unreasonably

determines the facts when it "plainly misapprehend[s] or misstate[s] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim . . . ." *Byrd v. Workman*, 645 F.3d 1159, 1171–72 (10th Cir. 2011) (internal quotation marks and citation omitted). Subsection 2254(e)(1) further instructs that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). And "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Significantly, the Supreme Court has "not yet 'defined the precise relationship between § 2254(d)(2) and § 2254(e)(1).'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 (2015) (quoting *Burt v. Titlow,* 571 U.S. 12, 15 (2013)).

*De Novo Review*

When an applicant presents a claim that the state courts have not adjudicated on the merits, the federal court may review that claim *de novo*. *Johnson v. Williams*, 568 U.S. 289, 293, 303 (2013). Then, the "standard of review is more searching." *Stouffer v. Trammell*, 738 F.3d 1205, 1213 (10th Cir. 2013) (internal quotation marks and citation omitted). And "[I] may exercise [my] independent judgment in deciding the claim." *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001).

With these standards in mind, I turn to Larsen's claims for habeas corpus relief.

### III. Discussion

***Claim One: Mr. Larsen's conviction violates his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process of law since the jury was not required to find the 'two or more acts of sexual contact' required for conviction of the [pattern count]. Pursuant to the plain language of Colorado's statute and* United States v. Alleyne*, 570 U.S. 99 (2013), this conviction must be vacated.***

## A. The Problem

The Sixth Amendment to the U.S. Constitution guarantees defendants in criminal prosecutions the right to a trial by an impartial jury. This right is guarded against state action by the Due Process Clause of the Fourteenth Amendment, which prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). The Due Process Clause protects defendants "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Supreme Court has emphasized that this includes "every element of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 522 (1995).

In *Apprendi v. New Jersey*, the Court applied these principles to hold that any fact, other than that of a prior conviction, that increases the prescribed statutory *maximum* sentence is an "element" of the offense and thus must be found by a jury. 530 U.S. 466, 490 (2000). The Court's opinion in *Alleyne v. United States*, extended its *Apprendi* holding to any facts that increase the *minimum* sentence permitted. 570 U.S. 99, 103 (2013) ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury.").

*Charges and Statute of Conviction*

Larsen was charged and convicted under Colorado Revised Statutes § 18-3-405.3, which provides:

> (1) Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child by one in a position of trust if the victim is a child less than eighteen years of age and the actor committing the offense is one in a position of trust with respect to the victim.

> (2) Sexual assault on a child by one in a position of trust is a class 3 felony if:

(a) The victim is less than fifteen years of age; or

(b) The actor commits the offense as a part of a *pattern of sexual abuse* as described in subsection (1) of this section. No specific date or time need be alleged for the *pattern of sexual abuse* . . . . The offense charged in the information or indictment shall constitute one of the incidents of sexual contact involving a child necessary to form a *pattern of sexual abuse* as defined in section 18-3-401(2.5).

Colo. Rev. Stat. § 18-3-405.3 (emphasis added). The phrase "pattern of sexual abuse" is defined in § 18-3-401(2.5) as "the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim." If a defendant is convicted of committing sexual assault on a child by one in a position of trust as part of a pattern of sexual abuse, he must be sentenced in accordance with § 18-1.3-406, the crime of violence sentencing statute. *See* Colo. Rev. Stat. § 18-3-405.3(4). Under that statute, the convicted defendant is subject to a mandatory minimum sentence of 8 years to life in prison.[4]

As set out above, Larsen was charged under § 18-3-405.3 with two counts involving his granddaughter AH.[5] Count 1 charged him with committing sexual assault on a child by one in a position of trust as part of a pattern of sexual abuse pursuant to § 18-30-405.3(2)(b), and Count 2 charged him with sexual assault on a child by one in a position of trust where the victim was under 15 pursuant to § 18-3-405.3(2)(a). Complaint & Information, CF at 6–8. Both were class 3

---

[4]The crime of violence sentencing statute provides that "any person convicted of a sex offense . . . that constitutes a crime of violence shall be sentenced to the department of corrections for an indeterminate term of incarceration of at least the midpoint in the presumptive range specified in section 18-1.3-401(1)(a)(V)(A) . . . up to a maximum of the person's natural life . . . ." Colo. Rev. Stat. § 18-1.3-406(1)(b). Section 18-1.3-401(1)(a)(V)(A) provides presumptive range of four years to twelve years for class three felonies, hence the "midpoint in the presumptive range" is eight years.
[5]Since Larsen was acquitted of the count involving his granddaughter KH, I do not discuss it here.

felonies, but only the pattern count was subject to enhanced sentencing pursuant to the crime of violence statute, § 18-1.3-406.

*Jury Instructions and Verdict Forms*

The instruction setting forth the charges against Larsen stated:

> The Defendant is charged with committing the crime of Sexual Assault on a Child by One in a Position of Trust against [KH]; all events occuring between and including July 1[,] 2012[,] and July 31, 2012; and the crimes of Sexual Assault on a Child by One in a Position of Trust and Sexual Assault on a Child by One in a Position of Trust - Pattern of Abuse against [AH]; occurring between and including December 1, 2011[,] and February 29, 2012, and events occuring within El Paso County, Colorado.

Instr. 2, Appl. Attach. 4 at 13, ECF No. 1-4. None of the charges was tied to any specific acts or allegations.

Even though Larsen was charged with two types of counts and independent verdict forms were submitted for each count, the jury received a single instruction outlining the elements necessary to convict Larsen of the non-pattern count. *See* Instr. 13, Appl. Attach. 4 at 24.[6] The lack of a separate elemental instruction for the pattern count was to be redressed by including the definition of "pattern of sexual abuse" in the instruction defining specific terms. There, the jurors were informed: "'PATTERN OF SEXUAL ABUSE' means the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim." Instr. 14, Appl. Attach. 4 at 25. No instruction explaining the reason for that

---

[6]Notably, the question of whether the sexual assault on a child by one in a position of trust was committed as a part of a pattern of sexual abuse was not submitted to the jury as a sentence-enhancing fact. It was charged in a separate count with a separate verdict form. Also, the substantive instruction for the non-pattern count (Instruction No. 13) included as an element "that the person was less than fifteen years of age," which is not an element of sexual assault on a child by one in a position of trust but instead another sentence-enhancing fact. *See People v. Leske*, 957 P.2d 1030, 1039 (Colo. 1998).

definition was provided, and "pattern of *sexual* abuse" appeared nowhere else in the instructions. The phrase "pattern of abuse" was used in the instruction setting forth the charges, *see* Instr. 2, *supra*, and on the verdict form. But it was left undefined for the jury.

Nowhere did the instructions inform the jury that, before convicting Larsen of the pattern count, the prosecution must have proven and the jury must have found beyond a reasonable doubt a "pattern of sexual abuse" or a "pattern of abuse."  The closest the instructions came to doing so was with the unanimity instruction, which required the jurors to "unanimously agree which act of sexual contact ha[d] been proven beyond a reasonable doubt" in order to convict Larsen of either count. Instr. 16, Appl. Attach. 4 at 28.

The verdict forms distinguished the various counts by title but did not compensate for the lack of clear direction regarding the pattern count. The verdict form for the pattern count asked the jury to find Mr. Larsen guilty or not guilty, and then provided the following interrogatories:

A. **And, we, the Jury, further find that the Defendant, Emmett Larsen,

[  ] **did not commit Sexual Assault on a Child by One in a Position of Trust - Pattern of Abuse by touching [AH's] breasts under her shirt.

[  ] **beyond a reasonable doubt did commit Sexual Assault on a Child by One in a Position of Trust – Pattern of Abuse by touching [AH's] breasts under her shirt.

* * * *

B. **We, the Jury, further find that the Defendant, Emmett Larsen,

[  ] **did not commit Sexual Assault on a Child by One in a Position of Trust - Pattern of Abuse by touching [AH's] vaginal area over her underwear.

[  ] **beyond a reasonable doubt did commit Sexual Assault on a Child by One in a Position of Trust – Pattern of Abuse by touching [AH's] vaginal area over her underwear.

Count 1 Jury Verdict, Appl. Attach. 4 at 33-34. The jury found, in addition to its general guilty verdict for the pattern count, that Mr. Larsen *did* commit the touching of AH's breasts under her

shirt but *did not* commit the touching of AH's vaginal area over her underwear. *Id.* Although evidence was presented regarding a third touching involving AH—touching AH's breasts over her shirt, the jury was not asked about it.[7]

**B. Deferential vs. *De Novo* Review**

In considering Larsen's first claim for habeas relief, I must initially determine whether the state court adjudicated the claim "on the merits" and thus whether it is subject to *de novo* or deferential review under 28 U.S.C. § 2254. The pertinent state court decision is the modified opinion of the Colorado Court of Appeals issued on remand from the Colorado Supreme Court and after Larsen filed his Petition for Rehearing. *See People v. Larsen*, Case No. 14CA0487 (Colo. App. Oct. 26, 2017) (unpublished) ("*Larsen 4*"), ECF No. 1-5.

Even a cursory reading of the Court of Appeals' opinion reveals that the majority did not engage in the constitutional analysis Larsen's jury verdict claim demands. *See Larsen 4* at 1-8. The decision starts down the correct path: "Defendant asserts that the jury verdict is insufficient to support his conviction for sexual assault on a child by one in a position of trust–pattern of abuse because the jury's verdict did not find that he committed two or more incidents of sexual assault on the same child victim." *Id.* at 2. But, from there, it careens off course. First, in its discussion of preservation of the issues and the standard of review, it cites to cases addressing sufficiency of the evidence, not sufficiency of the verdict.[8] Then, it continues down that

---

[7]The prosecutor requested that the third alleged incident be included as an additional interrogatory, but the court declined to do so. 8/19/13 Trial Tr. at 14:15-16:16.

[8]In support of addressing Larsen's challenge "to the verdict's sufficiency, even if unpreserved," it quotes the statement in *People v. Randell*, 2012 COA 108 ¶ 30, that "[a] defendant may challenge the *sufficiency of the evidence* on appeal without moving for a judgment of acquittal in the trial court." *Larsen 4* at 2-3 (emphasis added). And, after announcing that the standard of review is *de novo*, the majority cites *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005), for

misguided route by describing the evidence of the third incident of touching, about which the jury was not asked, and by concluding that evidence was sufficient for the jury to have found Larsen guilty of the pattern count.[9]

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson*, 568 U.S. at 301. Those circumstances exist here. As Judge Berger states in his dissent, despite the majority's proper statement of the issue, it based its holding on a different question altogether—whether the evidence in the record was sufficient to support the jury verdict, not whether the jury verdict was sufficient to support the conviction. *Larsen 4* at 9-11. Larsen petitioned the Court of Appeals for rehearing, specifically pointing the court to the constitutional rights and Supreme Court precedent implicated. *See* 8/17/17 Pet. Reh'g at 1, 3-4, 7, ECF No. 1-4. But doing so was to no avail. The majority modified its opinion, yet still did not cite or examine any of the relevant constitutional provisions or cases.

In *Johnson v. Williams*, the Supreme Court provided examples of when state courts might adjudicate a federal claim on its merits without separately addressing it, i.e., when state precedent fully incorporates a federal constitutional right, when the reference to the U.S. Constitution or federal precedent is insufficient to raise a separate claim, and when a claim is too

_____

"reviewing de novo whether *[the] evidence [was] sufficient to support conviction*." *Larsen 4* at 3 (emphasis added).

[9] *See Larsen 4* at 6 ("But the special verdict findings do not provide the only basis for the jury concluding that defendant committed multiple acts constituting a pattern of abuse. The parties do not contest that evidence of three separate instances of sexual contact was presented to the jury."); *id.* at 7 ("Although the jury found under the pattern of abuse verdict that defendant touched A.H.'s breasts under her shirt and did not touch her vaginal area over her underwear, the record evidence supports the [Count 2] position of trust verdict based on his touching of A.H.'s breast over her clothes."); *id.* at 8 ("[W]e conclude that the evidence was sufficient to support the jury's separate [Count 2] position of trust—victim less than fifteen years of age verdict.").

insubstantial to merit discussion. 568 U.S. at 298-300. None of those conditions is present here. The Court in *Johnson* also faulted the applicant for treating her state and federal claims as interchangeable and for neither petitioning for rehearing nor subsequently arguing that the state court had failed to adjudicate her claim on the merits. *Id.* at 306. Again, that is not the case for Larsen.

Under the present circumstances, the presumption that Larsen's jury verdict claim was adjudicated on the merits is overcome, and *de novo* review of that claim is appropriate. However, as demonstrated below, I would reach the same conclusion—that Larsen is entitled to habeas relief—even under the deferential review required by 28 U.S.C. § 2254, because the state court decision is contrary to clearly established Federal Law.

## C. Contrary to Clearly Established Federal Law

Under Colorado law, committing sexual assault on a child by one in a position of trust as a part of a pattern of sexual abuse triggers an increased mandatory minimum sentence. Accordingly, the existence of a pattern is an element of the offense that must be found by a jury beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 491; *Alleyne*, 570 U.S. at 103. The parties do not disagree on this conclusion. Rather, the parties dispute whether the sentence-enhancing factor—that the assault was committed as a part of a pattern of sexual abuse—was submitted to the jury and found beyond a reasonable doubt. Under the specific circumstances of this case, it cannot be concluded that the jury found a pattern of sexual abuse beyond a reasonable doubt. The problem with the jury findings and verdicts is twofold: First, the jury's responses to the interrogatories show the jury likely did not make the necessary findings to convict Larsen of the pattern count. And, second, the jury's general verdict for the pattern count cannot cure that defect

because the jury was not instructed that it must find a "pattern of sexual abuse" or a "pattern of abuse" to convict Larsen on that count. As established by Mr. Larsen, the resulting conviction violates his Sixth and Fourteenth Amendment rights as defined in *Apprendi, Alleyne, Gaudin*, and *In re Winship*.

Under *Apprendi* and *Alleyne*, the jury must actually find the sentence-enhancing factor or, as it was presented here, each element of the offense. It is not sufficient that, as concluded by the Court of Appeals, the jury *could have found* two or more incidents of sexual contact. Judge Berger's dissent to the Court of Appeals' opinion is discerning; the verdict is unreliable and any attempt to rationalize the conviction could only be based on speculation.[10] The majority's decision is therefore contrary to clearly established Federal law as determined by the Supreme Court.

Under § 2254(d)(1), "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision," *Harrington*, 562 U.S. at 102, and then it must ask whether those arguments or theories are contrary to or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court.

---

[10]Judge Berger's dissent states in relevant part:

> Larsen contends that under the circumstances presented here—where the jury was specifically tasked by special interrogatories to decide whether Larsen committed the alleged acts—a jury's general verdict based on acts other than those specifically decided by the jury renders the verdict reached unreliable. I agree. . . . The problem is that all we can do is speculate on what the jury found or didn't find when it convicted Larsen of the pattern count. We know that the jury found that Larsen committed one of the sexual acts alleged, and we know that the jury found that he did not commit another. But when the jury simply wasn't asked about the third alleged act and then enters a general verdict of guilt on a charge that requires at least two acts of sexual contact, that verdict does not carry the indicia of reliability that we must insist on in serious criminal cases.

*Larsen 4* at 10-11.

Since the majority's decision does not set out any arguments or theories that could support the sufficiency of the verdict on the pattern count, Respondents provide a few. First, they contend that the instructions and verdict forms, when read as a whole, did properly explain to the jury the findings necessary to convict Mr. Larsen of the pattern count. So, according to their reasoning, the jury's general guilty verdict with its finding of the predicate act of touching AH on her breasts under her clothes is sufficient. Second, Respondents claim the prosecutor's argument clarified for the jury that it needed to find two or more incidents of sexual contact involving a child. And, last, Respondents refashion the Court of Appeals' reasoning regarding the evidence of a third incident of touching. All of these theories are inconsistent with *Alleyne* and what is required by the Constitution.

Respondents' principal argument is that, "[w]hen read as a whole, the instructions explained to the jury that to find [Larsen] guilty of [the pattern count] it had to find that he committed 'two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim.'" *See* Answer at 21-22, ECF No. 8 (citing Jury Instruction No. 14 in which the definition of "pattern of sexual abuse" was provided). While "pattern of sexual assault" was defined in the instructions, the definition is insufficient because (1) there was no instruction on the elements of the pattern count, (2) no instruction informed the jury that the pattern count required it to find a "pattern of sexual abuse," (3) in fact, no instruction explained to the jury what to do with the pattern of sexual abuse definition, (4) so the jury's general verdict does not establish that it did in fact find two incidents of sexual contact, and (5) the jury's answers to the two interrogatories show only that it found a single incident.

Apart from those deficiencies, the inartful crafting and imprecise language of the instructions and verdict forms further cast doubt on any claim that the jury made the necessary

findings. The unanimity instruction required the jurors to "unanimously agree which act of sexual contact ha[d] been proven beyond a reasonable doubt" in order to convict Larsen of either count. Instr. 16, Appl. Attach. 4 at 28. The use of the singular—"act" and not "acts"—supports the conclusion that the jury's verdict does not manifest a finding of multiple incidents of sexual contact. Additionally, the instruction on reasonable doubt stated: "If you find from the evidence that *each and every element* has been proven beyond a reasonable doubt, you will find the defendant guilty." Instr. 4, Appl. Attach. 4 at 15. Since no instruction, elemental or otherwise, was provided for the pattern count, how was the jury to know each and every element of that crime and how was it to apply the reasonable doubt instruction to it? "Read as a whole," the instructions and verdict forms can only lead to the conclusion that the jury's verdict is unreliable such that Larsen's conviction for the pattern count is a violation of his constitutional rights.

Colorado courts have often grappled with jury instructions and verdict forms for the offense of sexual assault on a child committed as a part of a pattern of sexual abuse. *See, e.g.*, *Sanchez v. People*, 325 P.3d 553, 560 (Colo. 2014) (considering the constitutional protections of the Sixth Amendment and Due Process Clause and concluding: "Because the verdict form by which the jury found the defendant 'Guilty' of 'Sexual Assault on a Child—Pattern of Abuse' never offered the jury an opportunity to find that he committed the elements of sexual assault on a child, and instead reflected at most the jury's factual finding of two different incidents of sexual contact, the trial court erred in entering judgment of conviction . . . ."); *People v. Day*, 230 P.3d 1194, 1199 (Colo. 2010) (holding the instructions and verdict forms erroneously permitted the jury to find the defendant guilty of a pattern of abuse based only on attempted incidents of sexual contact); *People v. Brown*, 70 P.3d 489, 492 (Colo. App. 2002) (explaining that the title for the jury verdict form—"SEXUAL ASSAULT ON A CHILD—PATTERN"—should not

include the word "pattern," "because pattern is a sentence enhancement, not a separate offense."). It is apparent from the related decisions that juror confusion and unreliable verdicts result when particular attention is not given to such jury instructions and verdict forms. Further, it is axiomatic that each jury instruction and verdict form must be precisely tailored to the pleadings and the evidence in each particular case. Tailoring of instructions requires that unnecessary terms and concepts are removed and that the essential terms and concepts used be clearly stated. Even the authors of the leading publications on pattern jury instructions counsel that the *pro forma* pattern jury instructions they provide should be tailored to the fullest extent possible to the case being submitted to the jury. *See, e.g.*, Kevin F. O'Malley and Jay E. Grenig, Fed. Jury Prac. & Instr. § 7:2 (6th ed.) ("Each case has its own peculiar facts, and formalized instructions must be tailored to the requirements of the facts of the given case."). Here, the instructions and verdict forms, taken as a whole or viewed separately, do not meet this standard and the inevitable result is a well-founded doubt that the jury fulfilled its prescribed duty of rendering a clear and just verdict after finding the requisite elements beyond a reasonable doubt.[11]

Respondents' second contention is that the prosecutor clarified for the jury that it must find two or more incidents of sexual contact involving a child before convicting Larsen on the pattern count. Respondents cite the prosecutor's closing argument, in which she stated:

> I also have to prove to you one more thing as it relates to [AH]. Because if you will recall, [AH] makes more than just one disclosure. The definition here to focus on is that it has to be two or more incidents of sexual contact involving a child. Well,

_____

[11]I should be clear:  I do not find that the deficiencies in the jury instructions themselves amount to constitutional error. The error is the judgment of conviction on the pattern count based on an unreliable verdict and insufficient findings from the jury. Contrary to Respondents' suggestion, the invited error doctrine is inapplicable. Obviously, the question would be different had the jury found Larsen committed the pattern count by touching AH's breasts under her shirt *and* by touching her vaginal area or if the court had permitted the prosecutor to include an interrogatory on the second breast touching. Since those facts are not before me, I do not comment on them.

how do we know that? [AH] reported it happened three times. Once with the breasts, the vagina just soon after, and another time with her breasts.

8/19/13 Trial Tr. at 49:12-18. "But arguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky*, 436 U.S. 478, 488-89 (1978) (citing *United States v. Nelson*, 498 F.2d 1247 (5th Cir. 1974)). Furthermore, the trial court expressly instructed the jurors in this case that they were only to consider the law as he provided it: "It is my job to decide what rules of law apply to the case. While lawyers may have commented during the trial on some of these rules, you are to be guided by what I say about them." Instr. 1, Appl. Attach. 4 at 11. The prosecutor's argument without support from the jury instructions and verdict forms cannot and does not occasion confidence in the conviction.

Lastly, Respondents assert that the evidence presented at trial permits the inference that the jury did find the requisite two or more incidents of sexual contact. During the trial, the jury heard that Larsen sexually assaulted AH on three occasions—twice by touching her on the breasts and once by touching her on the vagina.[12] The Court of Appeals' majority speculates as to what the jury would have found had it been asked. But, not only was the jury not questioned about a third incident of sexual contact involving AH, it was not instructed to find a "pattern of sexual abuse" or a "pattern of abuse." Again, under *Apprendi* and *Alleyne*, an inference based on the evidence presented that the jury *could have found* two or more incidents of sexual contact is not sufficient. The jury must in fact find each element or factor, or the resulting conviction is a

---

[12]Hartman, the Department of Human Services caseworker, testified:

> [AH] stated her grandfather has her sit on his lap in his chair. He gives her back rubs and puts his hand down her pants and underwear and touches her skin. She says that this has happened three times. She indicates two of the incidents, he touched her breasts and her vagina area, and that the third time it was only her vaginal area.

8/15/13 Trial Tr. at 65:17–22.

violation of the defendant's constitutional rights. The Court of Appeals' decision arrives at the opposite conclusion applying a standard contrary to clearly established Federal law. *See Williams*, 529 U.S. at 405. And I am unable to conjure any justification for how it does not.[13]

Generally, a writ of habeas corpus may not be granted unless the found constitutional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116, 121-22 (2007) *(*quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). Respondents have not put forward any argument that this violation of Larsen's constitutional rights is harmless, and I will not fabricate ones on their behalf. *See Cook v. McKune,* 323 F.3d 825, 840 n.9 (10th Cir. 2003).[14] Nevertheless, this is precisely the type of error in which it is obvious there was a substantial and injurious effect or influence on the jury's verdicts. The verdicts in and of themselves reveal the error—that the jury likely did not make the requisite findings to convict Larsen of the pattern count. It is not clear from the jury's general verdicts or the evidence presented that the jury would have made those findings given the

---

[13]Although superfluous, I also conclude under § 2254(d)(2) that the Court of Appeals based its decision on an unreasonable determination of the facts in finding that "[t]he parties d[id] not contest that evidence of three separate instances of sexual contact was presented to the jury." *Larsen 4* at 6. Larsen's defense at trial centered on the non-occurrence of any sexual contact. *See* Instr. 17, Appl. Attach. 4 at 29. He argued that any touching of his granddaughters was not for the purpose of sexual arousal, gratification, or abuse. In his Petition for Rehearing, Larsen also clearly contested the Court of Appeals' statement that evidence of three instances of sexual contact had been presented to the jury. *See* 8/17/17 Pet. Reh'g at 4 n.2. Larsen has thus rebutted, by clear and convincing evidence, the presumption that the Court of Appeals' factual determination on this issue is correct. *See* 28 U.S.C. § 2254(e)(1). The Court of Appeals drew from that erroneous conclusion that the jury *could have found* two incidents of sexual contact, and so it held the evidence supporting Larsen's convictions was sufficient. The majority opinion "plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to [Larsen's] claim." *Byrd*, 645 F.3d at 1171–72 (internal quotation marks and citation omitted).

[14]Additionally, there is an argument to be made that the error in this case is "structural," such that the harmless-error analysis does not apply. *See Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993); *but see Washington v. Recuenco*, 548 U.S. 212, 222 (2006). But the parties did not undertake in this analysis since Respondents neglected to brief their harmless-error position.

opportunity. Consequently, the constitutional error was not harmless, and granting the writ of habeas corpus under § 2254(d)(1) is appropriate.

**D. The Remedy**

Having concluded Larsen is entitled to habeas relief on his conviction on the pattern count, I must determine the proper remedy. Doing so in this case is complicated by the state trial court's "merger" of Mr. Larsen's two convictions for sentencing purposes. Questions abound: Should Count 2 (the non-pattern count) stand if Count 1 (the pattern count) is vacated? Should a lesser-included offense conviction remain for Count 1 once the pattern sentencing-enhancer is vacated? Does separating the counts create a double jeopardy problem? Is retrial required or just resentencing? The parties submitted supplemental briefing on what remedy should be ordered (ECF Nos. 19 & 23). Mr. Larsen contends that merger of the convictions at sentencing left only his conviction for the pattern count in force. As a result, he requests that I vacate that single conviction and order his release unless a new trial is held within a reasonable amount of time. Respondents, on the other hand, state that the appropriate remedy is to conditionally grant the writ as to the pattern conviction and to instruct the state court to apply a result consistent with my findings. Alternatively, they propose that I order that Larsen be resentenced or retried on the pattern count, at the discretion of the prosecution.

I find Respondents' position to be more tenable than Larsen's. Although I am authorized to dispose of Larsen's Application "as law and justice require," 28 U.S.C. § 2243, I should not overreach and decide matters that have not been fully developed in state court. In his Petition for Rehearing in the Court of Appeals, Larsen sought for "the case [to] be remanded for resentencing for a class 3 felony without the pattern sentence enhancement." 8/17/17 Pet. Reh'g at 4. Now, he

asserts that any remedy other than vacating "the conviction" is not supported by the record and would be inequitable. Supplemental Br. at 2-3, ECF No. 19. These new-found propositions, while compelling, would have me circumvent the standards of habeas review and act in place of the state court and sentencing judge. Instead, I exercise restraint and permit each actor to fulfill its ordained role. The writ of habeas corpus is conditionally granted. The state court must craft a remedy to the constitutional violation found above within 90 days of the issuance of this Order. Otherwise, Larsen will be released from custody.

> ***Claim 2: Larsen was denied his constitutional rights to confrontation, to present a defense and to a fair trial by the trial court's exclusion of all evidence that the Department of Human Services obtained legal custody of the alleged victims and attempted to remove the children from their mother during the trial.***

## A. The Problem

The U.S. Constitution "guarantees a fair trial through the Due Process Clauses [of the Fifth and Fourteenth Amendments], but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment . . . ." *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). In addition to the right to an impartial jury, the Sixth Amendment affords the accused in all criminal prosecutions the right "to be confronted with the witnesses against him . . . and to have the Assistance of Counsel for his defence." U.S. Const. amend VI. These rights are enforced against the states under the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 406 (1965); *Gideon v. Wainwright*, 372 U.S. 335, 342-45 (1963). A primary interest secured by the Confrontation Clause is the right for the accused to cross-examine the witnesses against him. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). "There are few subjects, perhaps, upon which [the Supreme Court] and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and

fundamental requirement for the kind of fair trial which is this country's constitutional goal."
*Pointer*, 380 U.S. at 405. Additionally, whether originating from the Sixth Amendment or the
Fourteenth Amendment, "the Constitution guarantees criminal defendants a meaningful
opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)
(internal quotation marks and citations omitted).

The trial court in this case prohibited defense counsel from eliciting testimony on the
Department of Human Services' attempt to take custody of SL's children, AH and KH, during
the evening recess in SL's testimony. The circumstances here are distinct given that, although the
prosecution called SL to testify, it challenged her testimony and credibility. SL's testimony
favored Larsen in that she claimed AH had not previously told her about any incident in which
Larsen had touched her inappropriately and she stated that she did not have to leave her children
with him if she thought they were in danger. To discredit her, the prosecution presented evidence
(1) that law enforcement had not directly threatened to take her children from her if she did not
comply with their wishes and (2) that SL was aware Larsen had inappropriately touched AH
before Hartman informed her. Larsen sought to bolster SL's credibility as to her trial testimony
and to explain her motivations for her prior actions and statements. He argues that the trial
court's ruling prevented him from doing so, as he was unable to present evidence that would
have:

(1) assisted the jury in assessing SL's credibility;

(2) explained why SL's demeanor and attitude toward the prosecutor changed overnight;

(3) tended to show (i) how real and serious SL's fears were that if she did not do exactly what [the Department] wanted and/or the prosecution believed she should do, she would lose her children and (ii) how that genuine fear could have influenced her testimony and her prior statements to authorities;

(4) challenged [the Department] case manager Hartman's testimony that she had not threatened SL to take custody of the girls on August 2, the day the girls were first interviewed, and suggested an institutional bias so strong that [the Department] and Hartman would unilaterally risk influencing SL's trial testimony and interfering with Mr. Larsen's right to a fair trial;

(5) challenge[d] Detective Dabb's testimony that he did not threaten SL with taking her children or misperceive what SL had said to him about AH having previously told her about any touching by her grandfather; and

(6) challenged Officer Arndt's testimony refuting SL's testimony that she had no choice but to make the pretext call to her father because Arndt threatened her and told her it was the only way to keep her children.

Appl. at 19-20, ECF No. 1. Larsen adds that the court should have admitted the "exculpatory statements" SL made to Hartman when she came searching for the children. *See id.* at 21. Overall, he contends the excluded evidence could have swayed the jury such that it weighed more heavily SL's favorable testimony.

## B. Deferential vs. *De Novo* Review

As with Larsen's jury verdicts claim, I must begin by determining whether deferential or *de novo* review of Larsen's evidentiary claim is appropriate. The parties agree the state court decision for consideration on Larsen's second claim is the Colorado Court of Appeals' initial opinion. *See People v. Larsen*, Case No. 14CA0487, 2015 WL 6746509 (Colo. App. Nov. 5, 2015) ("*Larsen 1*"), *rev'd People v. Larsen*, 393 P.3d 543 (Colo. 2017).[15] According to Larsen, the Court of Appeals failed to fully address his claim "on the merits" since it only considered his right to confront witnesses and not the other constitutional rights his evidentiary claim

---

[15]The opinion held that the trial court's failure to poll the jury after publication of a prejudicial article was an abuse of discretion. While the Colorado Supreme Court reversed that holding, it did not review the Court of Appeals' additional conclusion that the trial court properly excluded the evidence regarding the Department's attempt to remove SL's daughters from her during the trial. *Larsen I* at *6.

implicates—the rights to present a defense and to a fair trial. It is true the court did not expressly discuss the right to present a defense or the broader right to a fair trial. Nevertheless, the law on which it based its conclusions is much the same as that on which Larsen relies.

The Court of Appeals cited, among other cases, the Colorado Supreme Court opinions in *People v. Saiz*, 32 P.3d 441 (Colo. 2001); *Merritt v. People*, 842 P.2d 162 (Colo. 1992); and *Krutsinger v. People*, 219 P.3d 1054 (Colo. 2009). *See Larsen 1*, 2015 WL 6746509, *5. Together, *Saiz* and *Merritt* reference *Chambers v. Mississippi,* 410 U.S. 284 (1973); *Davis v. Alaska*, 415 U.S. 308 (1974); *Delaware v. Fensterer*, 474 U.S. 15 (1985); and *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), all Supreme Court cases from which Larsen derives his claim. *Saiz*, 32 P.3d at 449; *Merritt*, 842 P.2d at 166. *Saiz*, in particular, discusses the right to present a defense, in addition to the right to confront witnesses. 32 P.3d at 449. In *Krutsinger*, the Colorado Supreme Court examined the appropriate constitutional standards to be applied in determining whether a defendant's right to a fair trial has been violated because he has been denied his Sixth Amendment right of confrontation or his ability to present a full defense under the due process clauses of the Fifth and Fourteenth Amendments. 219 P.3d at 1059-62.

It is evident from the legal framework laid out by the Court of Appeals that its decision addresses all aspects of Larsen's claim on the merits. Even if it were debatable whether the court had fully addressed the claim, however, I still presume that it did and no circumstance here would act to rebut that presumption. *See Johnson*, 568 U.S. at 301. As a result, I view Larsen's evidentiary claim with a skeptical eye as required by § 2254(d).

**C. Application of § 2254(d)**

The Court of Appeals held that the trial court did not abuse its discretion in excluding testimony related to the Department's attempt to remove AH and KH from SL's custody during the trial. Generally, the court reasoned that the ruling did not amount to a denial of the right of confrontation because there was already record evidence that the Department of Human Services had sought to gain custody of the children and that SL feared losing the children and felt threatened by Hartman and the investigating officers. The court also found that the new custody dispute was unrelated to the testimony of Hartman and the officers. Larsen argues that this analysis is contrary to and involves an unreasonable application of clearly established Federal law and is based on an unreasonable determination of the facts. I disagree on all counts.

*Contrary to Clearly Established Federal Law*

The Court of Appeals, Larsen claims, "applied the wrong legal standard when it substituted evidentiary rules for the appropriate constitutional inquiry." Reply at 33, ECF No. 12. Nothing in the Court of Appeals' opinion supports this assertion.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690 (internal quotation marks and citations omitted). Still, the Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Id.* (citing *Chambers*, 410 U.S. at 302). "'Only rarely' has the Court held "that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (per curiam). The Confrontation Clause of the Sixth Amendment

likewise does not prevent a trial judge from imposing limits on defense counsel's inquiry into the potential bias of a prosecution witness. *Van Arsdall*, 475 U.S. at 679. "On the contrary, trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*

As explained above, the Court of Appeals relied on many Colorado cases that discuss these principles and the same Supreme Court opinions to which Larsen cites. The Court of Appeals described the legal standard, stating:

> A defendant has a constitutional right to confront and cross-examine witnesses. *Krutsinger v. People*, 219 P.3d 1054, 1061 (Colo. 2009). This right includes the ability to cross-examine witnesses about evidence tending to show bias or to impeach. *People in the Interest of E.G.*, 2015 COA 18, ¶ 27, —— P.3d ——. But a defendant is not entitled to unlimited cross-examination. *Merritt v. People*, 842 P.2d 162, 166 (Colo.1992). The court must ensure "the sideshow does not take over the circus." *People v. Taylor*, 190 Colo. 210, 213, 545 P.2d 703, 706 (1976). Unless the trial court restricts cross-examination to such an extent as to constitute a denial of the right to confrontation, the scope and limits of cross-examination are within the court's discretion. *People v. Knight*, 167 P.3d 147, 152 (Colo.App.2006).

*Larsen 1*, 2015 WL 6746509, *5. Neither this standard nor the court's application of it is contrary to Supreme Court precedent.

Larsen looks to the Seventh Circuit case *Rhodes v. Dittmann*, 903 F.3d 646 (7th Cir. 2018), for support. There, the court stated: "[I]t is clearly established that a trial court violates the Confrontation Clause when it routinely applies Rule 403 balancing to limit cross-examination by the accused on issues central to the defense." *Id.* at 657 (citing *Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (per curiam); *Van Arsdall*, 475 U.S. at 679-80). The court emphasized that the error was in "applying ordinary Rule 403 balancing, without giving any special consideration to the defendant's constitutional right to confront witnesses against him." *Rhodes*, 903 F.3d at 659. It relied heavily on the Supreme Court's opinion in *Olden v. Kentucky*. In *Olden*, the state court

found—"without acknowledging the significance of, or even adverting to, petitioner's constitutional right to confrontation"—that the danger of prejudicing the jury against the victim justified the exclusion of relevant evidence. 488 U.S. at 232. Despite Larsen's insistence otherwise, the ruling here does not suffer from the same malady. The Court of Appeals' decision examines a defendant's constitutional right to confrontation and incorporates Larsen's right to present a defense in the analysis. The decision describes the evidence Larsen presented on the Department's previous attempts to take custody of the children and SL's fears that she would lose her children if she did not cooperate with the authorities. It concludes that Larsen "was allowed to discuss S.L.'s credibility in light of the ongoing custody dispute with [the Department]."[16] *Larsen 1*, 2015 WL 6746509, *6. This is not basic 403 balancing. Moreover, the Court of Appeals found that the excluded evidence was not relevant to the testimony of Hartman or the officers since the incident was remote in time from the events about which they testified. The Court of Appeals' discussion of this issue does relate to state law evidentiary principles, but it does so in the context of constitutional limits on those principles, just as the Supreme Court has authorized. *See, e.g.*, *Van Arsdall*, 475 U.S. at 679.

*Involved an Unreasonable Application of Clearly Established Federal Law*

The Court of Appeals' decision similarly does not involve an unreasonable application of Federal law under § 2254(d)(1), as all fairminded jurists would not agree that the decision was incorrect. *See Carpenter*, 907 F.3d at 1289. "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness . . . ."

---

[16]The court's conclusion here further substantiates that it addressed Larsen's claim on the merits with respect to his right to present a defense.

*Van Arsdall*, 475 U.S. at 680. As the Court of Appeals explicitly held, Larsen has shown no such violation here. Nor has he demonstrated any violation of his right to a meaningful opportunity to present a complete defense or his right to a fair trial generally due to exclusion of the evidence.

With respect to SL's credibility and alleged bias and the impact of the excluded evidence on the testimony of Hartman and the officers, the Court of Appeals stated:

> To the extent defendant asserts he needed to cross-examine S.L. about this specific incident in order to bolster her credibility, there was record evidence that [the Department] sought to take custody of S.L's children. S.L. testified that a dependency and neglect proceeding was filed against her and she was told there was a "strong likelihood" [the Department] would succeed in taking custody of her children in that proceeding. She also testified that she felt threatened by the investigating officers and believed she needed to work with the authorities to protect her right to retain custody of her children. Additionally, she stated that she made the pretextual phone call to defendant because she was told it was the only way to retain custody of her children. Thus, defendant was allowed to discuss S.L.'s credibility in light of the ongoing custody dispute with [the Department].

> We also address defendant's argument that this evidence bolstered S.L.'s belief "that if she did not do exactly what [the Department] and/or the prosecution believed she should do, she would lose her children." The court's actions would not have supported these fears because it countermanded the magistrate's order and stated that "[t]he children are not going to be taken away from you." Contrary to defendant's assertion that S.L. testified under the shadow of threats by [the Department] and other witnesses when she was cross-examined, the court had just assured her that she could testify free of this alleged duress.

> In addition, the midtrial attempt to take custody of S.L.'s children was unrelated to the testimony of Ms. Hartman, Detective Dabb, and Officer Arndt. These witnesses discussed events that occurred before trial and only Ms. Hartman was in a position to comment directly on [the Department's] attempt to remove the children from S.L.'s custody. Ms. Hartman stated that [the Department's] attempt to take custody of the children was not connected to the prior alleged threats, but followed her report to [the Department] discussing the children's testimony from the day before.

*Larsen 1*, 2015 WL 6746509, *6.

Larsen's claim paints with broad strokes, focusing on the appearance of the circumstances and not the particular facts. His arguments regarding the excluded evidence as it relates to SL fit into two broad categories: (1) SL's bias associated with the prosecution and (2)

her credibility. As Larsen's reasoning goes, first, SL assisted in the investigation of Larsen because she feared losing custody of her children, and the excluded evidence would have supported that there was a real possibility that she would have lost her children if she did not do what Hartman and the officers asked. Then, after the midtrial attempt to take custody of her daughters, SL allegedly demonstrated a change in attitude and demeanor, or bias against the prosecution. Larsen contends the excluded evidence would explain the source of this resentment for the jury. SL's credibility, in turn, was significant because she testified that AH had not previously told her about any inappropriate touching by Larsen and that she did not have to leave her daughters with Larsen if she felt they were in danger. Larsen asserts that the excluded evidence would have bolstered SL's credibility by demonstrating how real and serious the likelihood of her losing her children was despite the testimony of Hartman and the officers that they did not threaten her with the custody of her daughters.

It was reasonable for the court to find that cross-examination on the happenings of the prior night was not appropriate as it would not be helpful in assessing SL's actions and bias during the investigation because it was remote in time to those events. And the Court of Appeals was correct in its implicit finding that Larsen had a meaningful opportunity to present his defense since there was significant other evidence before the jury concerning SL's feeling that she was coerced and threatened. Defense counsel questioned SL on her state of mind during the investigation and in making the pretext call. She testified that she only assisted Hartman and the officers with the investigation because she felt that her daughters could be taken from her if she didn't. 8/15/13 Trial Tr. at 39:5-13, 40:3-11. The jury heard that she was "[v]ery emotional" and "[v]ery scared, but willing to do what she needed to do to keep the kids safe." *Id.* at 69:1-2, 81:17-19. Defense counsel also elicited testimony from Hartman that a dependency and neglect

action was brought against SL, but that she maintained custody of her children by completing a treatment program to the court's satisfaction. 8/15/13 Trial Tr. At 74:15-76:15. The record contained ample evidence to establish that SL's fear that she would lose her daughters if she did not cooperate was genuine and likely influenced her testimony and her prior statements to authorities.

Larsen additionally alleges that, likely as a result of the Department's midtrial attempt to take her children, SL's demeanor changed overnight during her testimony. He claims this is evidenced by her response to the prosecutor that she did not really remember testifying the day before. *See* 8/15/13 Trial Tr. at 50:21-23. From the transcripts, no difference in her demeanor over the two days of her testimony is obvious. Any resentment she harbored for the prosecution was exposed on the first day. *See, e.g.*, 8/14/13 Trial Tr. at 121:24-25 ("I felt like I got shamboozled, and the next thing I know, I'm being told I got a warrant out for me."). Regardless, it was not unreasonable for the Court of Appeals to find that any duress or fear SL felt on the second day of her testimony was neutralized by the trial court's advisement to SL that he had countermanded the custody order. Larsen points to the fact that the children were eventually removed from SL to show that the judge's advisement had no impact. But, at the time of SL's testimony, she could only act based on the judge's assurance that the children would not be taken away from her.

The excluded evidence also was not relevant for assessing SL's credibility.[17] It was obvious from the testimony of Hartman and Officer Arndt that the possibility of removing the

---

[17]The trial court commented to the jury that SL was tardy on the second day of her testimony because she "inadvertently overslept." 8/15/13 Trial Tr. at 16:14-16. Larsen argues that this comment likely prejudiced the jury against SL and played into the prosecution's portrayal of her as an unfit mother. Although the explanation was ill-advised, I see no violation of Larsen's constitutional rights from the briefing on this matter.

children from SL at the time of the investigation was discussed, and SL's fears were legitimate in that regard. The testimony from Hartman and the officers that they did not threaten SL or state that her children would be taken away if she did not comply with their requests does not necessarily undermine SL's testimony that she felt threatened. Even though Hartman and the officers testified that they did not threaten her, their testimony supported the fact that SL was distraught and likely motivated to do anything so that she did not lose her children. Specifically, Hartman and Officer Arndt testified that they advised SL of the real possibility that her children might be removed from her. 8/15/13 Trial Tr. at 68:20-25, 102:3-17. Detective Dabb stated that SL was "[v]ery emotional, crying at times. Trembling." 8/15/13 Trial Tr. at 81:17-19. And Hartman confirmed SL was "[v]ery scared, but willing to do what she needed to do to keep the kids safe." *Id.* at 69:1-2.[18]

Assuming the testimony directly conflicted, though, the excluded evidence was not relevant to whether Hartman and the officers had previously threatened SL. Detective Dabb and Officer Arndt were not involved in the midtrial custody dispute, and Hartman's attempt to remove the children at that time was solely related to the new developments in the case—the children staying with Larsen despite the ongoing criminal proceedings. Thus, the evidence would not have substantiated SL's testimony. And, for the same reasons, it would not have challenged that of Hartman and the officers.

There is no evidence and no allegations have been made that the Department decided to take custody of SL's daughters during the trial because she did not testify favorably for the

---

[18]With significant equivocation, SL claimed that Hartman and the officers "basically" threatened her, that they told her that the only way to keep her kids was to make the pretext phone call, and that she felt threatened because they were accusing her of not taking care of her children and of instructing her daughters not to tell them anything. *See* 8/14/13 Trial Tr. at 143:1-11; 8/15/13 Trial Tr. at 39:5-13, 40:3-11.

prosecution. The evidence indicates the Department independently sought the midtrial custody order based on its own policies and the prosecution was not involved. *See* 8/15/13 Trial Tr. 5:1-3, 13:19-14:4. Furthermore, the matter of whether any institutional bias existed was not before the jury and any determination that it did would be based on inappropriate speculation.

Larsen was not prohibited from engaging in otherwise appropriate cross-examination, was not denied a meaningful opportunity to present a complete defense, and was not prevented from receiving a fair trial based on his evidentiary claim. While there is room for disagreement with the trial court's decision to exclude the evidence of the Department's attempt to take custody of AH and KH during the trial, Larsen has not shown that the Court of Appeals applied the wrong standard or that its application of the correct standard was unreasonable.

*Based on an Unreasonable Determination of the Facts*

Finally, I am also unpersuaded by Larsen's contention that the Court of Appeals' decision is based on an objectively unreasonable determination of the facts pursuant to § 2254(d)(2). In reviewing the Court of Appeals' determination of the facts, Larsen simply rehashes his arguments under § 2254(d)(1) that the Court of Appeals unreasonably applied the law to the facts. He does not actually attack the Court of Appeals' factual determinations. Rather, he concedes the correctness of several of the determinations but asserts the Court of Appeals did not draw the appropriate conclusions from them. As I have found, the Court of Appeals' decision on Larsen's evidentiary claim is not contrary to and does not involve an unreasonable application of clearly established Federal law. Habeas relief on his second claim is therefore unavailable under 28 U.S.C. § 2254(d).

## IV. Conclusion

Accordingly, Larsen's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is CONDITIONALLY GRANTED on his first claim for relief. Unless the state courts take action to remedy the constitutional violation detailed in this Order within 90 days, Larsen SHALL BE RELEASED FROM CUSTODY forthwith.

The parties are DIRECTED to file a status report on or before February 3, 2020, informing me of any efforts by the state courts to comply with this Order.

With respect to Larsen's second claim for relief, his Application is denied. Under 28 U.S.C. § 2253(c), a prisoner may not appeal the denial of his habeas application without a certificate of appealability. Although a certificate may prove to be unnecessary in this case, *see Jennings v. Stephens*, 135 S. Ct. 795, 802 (2015), I consider whether one should issue for efficiency's sake. The exclusive basis for issuing a certificate of appealability is "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "Such a showing is made only where a prisoner demonstrates 'that jurists of reason would find it debatable' that a constitutional violation occurred, and that the district court erred in its resolution." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Larsen's second claim for relief does not meet this standard, and so a certificate of appealability is DENIED.

DATED this 20th day of November, 2019

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE